The relief described hereinbelow is SO ORDERED.

Signed June 22, 2007.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

**In re:**

| | |
|---|---|
| **JAMES EDWARD PUETZ and** | **Case No. 06-20756** |
| **LINDA RISTOW PUETZ,** | **Chapter 13** |
| **Debtors.** | |

## MEMORANDUM OPINION AND ORDER
## DENYING CONFIRMATION OF CHAPTER 13 PLAN

Confirmation of Debtors' Chapter 13 plan is pending before the Court.[1] The Chapter 13 Trustee objects and alleges Debtors' proposed plan does not commit all projected disposable income to unsecured creditors.[2] The Trustee also raised an issue regarding Debtors' 401(k) contributions and loan repayments, but the parties appear to have resolved this issue in their briefs. The remaining issues are: (1) the amount of Debtors' monthly disposable income; and (2) whether the term "unsecured creditors" in 11 U.S.C. § 1325(b)(1)(B) encompasses both priority and general unsecured creditors. The Court, having reviewed the relevant pleadings and

---

[1] Doc. No. 2. Debtors James Edward Puetz and Linda Ristow Puetz appear by Drew Frackowiak, Overland Park, Kansas. Trustee William H. Griffin appears in person and by Dianna J. Lord.

[2] Doc. No. 15.

having considered counsel's argument, sustains the Trustee's objection and denies confirmation because the plan does not comply with 11 U.S.C. § 1325(b).

**Findings of Fact**

The parties agreed to submit the issues based on the pleadings. Debtors filed for Chapter 13 relief on June 1, 2006. Debtors' Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C") indicates the Debtors are above-median income debtors. Debtors report annualized current monthly income of $146,994.60. The median family income for a family of three is $56,386. Debtors completed the disposable income calculation under 11 U.S.C. § 1325(b)(3) and report monthly disposable income of $461.20. Debtors' Amended Schedules I and J reflect a monthly net income of $1,425.84. Debtors' plan proposes to pay $950 per month for 57 months. Of the $950 monthly payment, $525.66 will be paid toward secured debt, leaving $424.34 per month for administrative expenses, priority claims, and unsecured creditors. The Trustee calculated his own Form B22C for Debtors and arrives at a monthly disposable income of $871.00. The difference between the Debtors' Form B22C and the Trustee's Form B22C primarily stems from expense deductions for insurance.

Debtors also take deductions for retirement plan contributions and for retirement plan loan repayments. The Trustee alleges Debtors are making a total of $648.25 per month in contributions and are repaying a retirement plan loan at $616.20 per month for a total of $1,264.45 per month.[3] The Debtors state their combined retirement contributions and loan repayments total $746.08 per month.[4] Under either number, the Trustee objects to Debtors'

---

[3] Doc. No. 25 at 11.
[4] Doc. 20 at 2.

aggregate contributions/loan repayments because they exceed the Court's previous $500 or five percent of monthly gross income limit on contributions to qualified retirement plans.

## Conclusions of Law

This contested matter is a core proceeding over which the Court has jurisdiction.[5]

**Applicable Commitment Period**

The Debtors are above-median income debtors. Under the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 ("BAPCPA"), the Debtors' applicable commitment period shall be not less than five years.[6]

**Disposable Income**

BAPCPA requires a debtor's projected disposable income be committed to paying unsecured creditors. Section 1325(b)(1)(B) states:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> [T]he plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Section 1325(b)(2) then states:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . .

Lastly, § 1325(b)(3) states "amounts reasonably necessary" as expenses shall be determined under § 707(b)(2)(A) and (B) if the debtor is an above-median income debtor. Under

---

[5] 28 U.S.C. §§ 157(b)(2)(L) and 1334.
[6] 11 U.S.C. § 1325(b)(4)(A)(ii)(II); *In re Beckerle*, Case No. 06-20572 (Bankr. D. Kan. April 13, 2007).

§ 707(b)(2)(A)(ii)(I), a debtor's expenses are those provided by the National and Local Standards established by the Internal Revenue Service, as well as some actual expenses categorized as "Other Necessary Expenses." Subsections 707(b)(2)(A)(ii)(II)-(V) list additional possible expenses, including the actual expenses of administering the Chapter 13 plan. Section 707(b)(2)(A)(iii) calculates a debtor's payments on account of secured debts, and § 707(b)(2)(A)(iv) calculates a debtor's payments on account of priority debts. Above-median income debtors must deduct the foregoing expenses from their current monthly income to calculate their monthly disposable income.[7] Form B22C aids debtors in making this calculation. The monthly disposable income reported on Form B22C is presumptively the debtor's "projected disposable income" under § 1325(b)(1)(B) unless the debtor can show special circumstances warranting an adjustment to either the debtor's current monthly income or expenses.[8] A debtor's monthly disposable income from Form B22C is not the plan payment. Monthly disposable income is just one component of the plan payment. The final plan payment will also include other budgeted items deducted from current monthly income to be paid through the plan. For example, a plan payment may equal a debtor's monthly disposable income plus monthly administrative expenses plus monthly secured debt payments to be paid through the plan.

Schedules I and J no longer determine plan payments for above-median income debtors. Schedules I and J do not conclusively establish a debtor's net monthly income even though they may constitute the debtor's best estimates of future income and expenses.[9] The trustee's mere assertion that Schedules I and J demonstrate an ability to pay more does not justify rejecting a

---

[7] 11 U.S.C. § 1325(b)(2) and (3).
[8] 11 U.S.C. § 707(b)(2)(B); *In re Miller,* 361 B.R. 224, 234-35 (Bankr. N.D. Ala. 2007); *In re Jass,* 340 B.R. 411, 418-19 (Bankr. D. Utah 2006); *In re Lanning*, Case No. 06-41037 (Bankr. D. Kan. May 15, 2007).
[9] *In re Moore,* --- B.R. ---, 2007 WL 1111267 (Bankr. D. Kan. Arpil 13, 2007).

plan which proposes to pay the monthly disposable income derived from Form B22C. Schedules I and J show whether a debtor's plan is feasible, but they no longer determine disposable income for above-median income debtors.[10] The trustee may still direct the court's attention to special circumstances or challenges to Form B22C deductions which justify adjustments to the debtor's Form B22C calculations without relying solely on Schedules I and J.

In this case, the Trustee objects because Debtors' Schedules I and J show more excess income than Debtors' Form B22C. The Court finds Form B22C presumptively determines Debtors' monthly disposable income, not the comparison of Schedules I and J, because Debtors have above-median income. The Debtors' plan, by their own calculations, should commit at least $461.20 in monthly disposable income to unsecured creditors. However, the proposed plan only commits $424.34, so the plan cannot be confirmed. Further, the Trustee objects to the amounts of Debtors' Form B22C deductions. Thus, Debtors' presumptive Form B22C monthly disposable income is subject to being rebutted. If the Trustee prevails on his specific line item objections to Form B22C, the Debtors' monthly disposable income shall be adjusted accordingly. If the parties cannot reconcile their differing Form B22C calculations, an evidentiary hearing is required to determine whether an adjustment to Debtors' expense deductions is warranted.

**Payment to Unsecured Creditors**

Section 1325(b)(1)(B) provides that all of a debtor's projected disposable income will be applied to make payments to *unsecured creditors.* The Trustee and Debtors offer differing interpretations of "unsecured creditors." The Trustee argues only general unsecured creditors

---

[10] *In re Rotunda,* 349 B.R. 324, 331 (Bankr. N.D.N.Y. 2006).

07.06.22 Puetz.wpd

are included in this particular subsection, while Debtors argue all unsecured creditors, including those holding priority claims, are included.

The question is a close call because of the plain language of the statute. Where the language of the statute is plain, the Court's function is to enforce it according to its terms.[11] When interpreting a statute, the Court examines the language and employs its common meaning, provided the result is not absurd or contrary to legislative purpose.[12] However, the Court must examine the entire law as written, not just a single sentence or a member of the sentence.[13] "Unsecured creditors" is not an isolated phrase. Section 1325(b)(3), by incorporating § 707, provides a continuum along which debtors build a budget. The calculations performed under § 707(b)(2)(A) and on Form B22C presumptively provide an estimate of how much a debtor can afford to pay unsecured creditors after reasonably necessary expenses have been deducted from the debtor's current monthly income. Some unsecured creditors are provided for under § 707(b)(2)(A), but not all. For example, prepetition priority claims are specifically provided for under 11 U.S.C. § 707(b)(2)(A)(iv), and postpetition trustee's fees are specifically provided for under 11 U.S.C. § 707(b)(2)(A)(ii)(III). On the other hand, a debtor's anticipated attorney's fees are not specifically referenced even though the debtor's attorney's fees are an unsecured administrative claim given priority under 11 U.S.C. § 507(a)(2). Thus, while the plain language of the statute, at first glance, appears to provide a debtor's projected disposable income for all unsecured creditors, both priority and non-priority, the statutory scheme as a whole itemizes a budget in which some unsecured creditors are provided for outside the unsecured creditors pool,

---

[11] *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989).
[12] *Dalton v. Internal Revenue Service*, 77 F.3d 1297, 1299 (10th Cir. 1996).
[13] *Id.*

-6-

while others are not.

Three courts have grappled with the issue and have found priority creditors are not included in § 1325(b)(1)(B).[14] *Wilbur,* the first case, found "unsecured creditors" had to refer to only non-priority unsecured creditors based upon Congress's manifest intent, the absurdity of allowing the double-counting of priority debts, and pre-BAPCPA practice. Following *Wilbur, McDonald* likewise concluded that trustee's fees could not be paid from the unsecured creditors pool and had to be added to the debtor's monthly disposable income as determined in Form B22C when calculating their plan payment. *Amato* addressed both trustee's fees and attorney's fees. *Amato* followed *Wilbur* and *McDonald* regarding trustee's fees, then further concluded attorney's fees were not to be paid from the Form B22C monthly disposable income.[15]

Section 1325(b)(1)(B) creates a continuum. It begins with a debtor's current monthly income in § 1325(b)(2). Section 1325(b)(3) then allows deductions for reasonable and necessary expenses as provided for under § 707(b)(2)(A). Under § 707(b)(2)(A)(ii)(III), a debtor may allot a line item in his budget for trustee's fees. Under § 707(b)(2)(A)(iv), a debtor may allot a portion of his budget for prepetition priority claims. A debtor may also take a deduction for any other expense specifically provided for in § 707(b)(2)(A). For the unsecured creditors remaining after these deductions, the resulting monthly disposable income calculated from Form B22C shall be their allotment of the plan payment shared *pro rata* pursuant to § 1325(b)(1)(B). The plan payment will be comprised of these components paid through the plan.

Under Debtors' argument, debtors would deduct priority expenses twice. First, a debtor

---

[14] *In re Wilbur,* 344 B.R. 650 (Bankr. D. Utah 2006); *In re McDonald*, 361 B.R. 527 (Bankr. D. Mont. 2007); *In re Amato*, --- B.R. ---, 2007 WL 878489 (Bankr. D.N.J. Jan. 29, 2007).

[15] *Amato* did not state how attorney's fees were to be paid and seemed to conclude that they would not be paid because they were not specifically provided for in the statute. This Court does not agree with such a result.

-7-

would allot a portion of his budget to pay prepetition priority claims as § 707(b)(2)(A) expenses. If later the debtor includes prepetition priority claimants with unsecured creditors under § 1325(b)(1)(B), prepetition priority claimants receive two allotments for payment within the debtor's budget, which is the double-counting described in *Wilbur*. This is an illogical result. An actual expense deduction under § 707(b)(2)(A) is not a credit for the debtor to keep under § 1325. Unlike § 707(b)(2)(A)(ii)(I) allowing debtors expense amounts specified under the National and Local Standards regardless of whether the expenses are real to the debtor, the remaining subsections only allow *actual* expenses.[16] If the debtor does not owe prepetition priority claims, he does not take a deduction. If the debtor owes such priority claims, these priority claims must be paid whether there is disposable income or not as required by § 1322(a)(2). Creditors specifically provided for under § 707(b)(2)(A) need not share in the unsecured creditors pool under § 1325(b)(1)(B).

But what about priority claimants who are not specifically budgeted for under § 707(b)(2)(A), such as debtor's attorney? Such creditors are still "unsecured creditors" entitled to payment under § 1325(b)(1)(B). On this point, the Trustee in this case concedes a debtor's attorney's fees are to come from the "unsecured creditors" pool. The Advisory Committee Notes to Official Form B22C agree, noting,

> The Chapter 13 form does not provide a deduction from disposable income for the Chapter 13 debtor's anticipated attorney fees. There is no specific statutory allowance for such a deduction, and none appears necessary. Section 1325(b)(1)(B) requires that disposable income contributed to a Chapter 13 plan be used to pay "unsecured creditors." A debtor's attorney who has not taken a security interest in the debtor's property is an unsecured creditor who may be paid

---

[16] 11 U.S.C. § 707(b)(2)(A)(ii)(II)-(V). In subsections (iii) and (iv), the statute does not explicitly say "actual" expenses, but the language can only be read to mean what the debtor actually owes and pays on account of secured and priority debts.

-8-

from disposable income.[17]

After working through the § 707(b)(2)(A) budget, the Court should logically and, in fact, plainly, read "unsecured creditors" in § 1325(b)(1)(B) as a catchall phrase to address creditors not specifically referenced elsewhere. Unlike *Amato's* reliance on *Lamie*,[18] which held § 330(a)(1) did not authorize compensation to a debtor's attorney out of the estate unless the attorney was employed by the estate because such attorneys were not specifically referenced in the statute, this Court does not need to read additional language into § 1325(b)(1)(B) to allow a postpetition priority claim to be paid from the unsecured creditors pool. Rather, § 1325(b)(1)(B), by incorporating § 707(b)(2)(A), carves out certain priority and administrative creditors to be paid with a line item deduction. However, known deductions at confirmation do not cut off the possibility of post-confirmation priority claims or allowances for under-estimated prepetition priority expenses. During the course of a five-year plan, other administrative priority expenses are bound to arise which could not be budgeted for prepetition, especially postpetition attorney's fees. Attorneys and any other similarly situated priority creditor do not go unpaid when they are provided priority under § 507. Likewise, a debtor's estimates of trustee's commissions and prepetition priority claims may be too low. These creditors must still be paid their entire claim amounts from the unsecured creditors pool. In short, unless specifically and accurately budgeted for by § 707(b)(2)(A), all unsecured creditors, priority and non-priority, are to be paid under § 1325(b)(1)(B). If allowed prepetition priority claims are more than that estimated by the debtors, then the additional sum shall be paid and deducted from the "unsecured claims" pool.

In this case, Debtors have allotted $33.57 per month toward payment of their priority tax

---

[17] Official Bankruptcy Form 22 advisory committee note ¶ D.3.
[18] *Lamie v. United States Trustee*, 540 U.S. 526 (2004).

07.06.22 Puetz.wpd

claims. This allotment is an appropriate § 707(b)(2)(A)(iv) expense and shall not come out of Debtors' monthly disposable income as reported on line 58 of Form B22C (pending resolution of the Trustee's objections to other expense deductions). In determining their plan payment, the Debtors shall add $33.57 to line 58. The Debtors shall also add the Trustee's fee from line 50.[19] The Debtors' final plan payment shall be the foregoing sum plus any monthly secured debt payments to be paid through the plan.

The Trustee prevails on this point. By Debtors' own calculations, Debtors are presumptively required to pay $461.20 per month to unsecured creditors. The known priority tax creditor is carved out with a $33.57 allotment under § 707. Unsecured creditors in § 1325(b)(1)(B) do not include administrative, priority, or any other actual expense claimants budgeted for under § 707(b)(2)(A)(ii)(II)-(V) and (iii)-(iv); however, unsecured creditors do include all other unsecured creditors. Further, in the event post-confirmation trustee's fees and other priority claims exceed the estimates made on Form B22C, the difference shall be paid first from the unsecured creditors pool as required by the Code's priority scheme.

**401(k) Contributions and Loan Repayments**

Section 1322(f) provides that 401(k) loan payments shall not constitute disposable income under § 1325. Further, § 541(b)(7) excepts from property of the estate any amount contributed to a qualified retirement plan, to the extent legally permitted. Both of these

---

[19] The Court notes the Trustee bifurcated his commission based upon secured debt distributions and unsecured debt distributions, with the latter being paid from the unsecured creditors pool. The Trustee offers no support for this. Section 707(b)(2)(A)(III) provides for the actual commission without differentiation. Form B22C, line 50, requires the debtor to calculate the trustee's commission based upon the "projected average monthly Chapter 13 plan payment," again without differentiating between secured and unsecured debt payments. The Court finds the Trustee shall calculate his anticipated commission based upon the projected average monthly plan payment. To the extent the estimate falls short in the reality of the plan's execution, the commission may be paid from the unsecured pool.

-10-

provisions are new under BAPCPA and have changed the law.[20]

In this case, Debtors' contributions and payments on account of their 401(k) loans shall not be included in calculating disposable income. The Debtors are not required to contribute any of this income toward their Chapter 13 plan. The Court's pre-BAPCPA limits are no longer supported by the Code.

### Conclusion

The Trustee's Objection to Plan Confirmation is sustained. The Debtors are allowed 45 days to file an amended plan consistent with this Order.

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

---

[20] *In re Njuguna,* 357 B.R. 689, 690-91 (Bankr. D.N.H. 2006).